Felix GAUDET

v.

**J. RAY McDERMOTT & CO., INC., et al.**

Civ. A. No. 81–2262.

United States District Court,
E.D. Louisiana.

March 18, 1983.

</div>

Andrew L. Hamlin, Hailey, McNamara, Hall, Larmann & Papale, Metairie, La., for plaintiff.

Russell M. Cornelius, Normann & Normann, New Orleans, La., for defendants.

## MEMORANDUM AND ORDER

MENTZ, District Judge.

The matter now before the Court in this case is a motion submitted by Keystone Inspection Services, Inc. ("Keystone") for summary judgment against Conoco, Inc. ("Conoco"). Keystone is the employer of Felix Gaudet, a longshoreman allegedly injured while working aboard a barge owned by J. Ray McDermott & Co., Inc. ("McDermott"). After his alleged injury, Gaudet filed suit against McDermott. McDermott then filed a third-party demand for indemnity against Conoco, which is neither a vessel owner nor a charterer but a platform owner. Conoco, in turn, filed a third-party demand for indemnity against Keystone. This last demand is the subject of the motion now before the Court. Keystone contends that this demand is barred by section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"). 33 U.S.C. § 905(b). Conoco contends just the opposite. In Conoco's view, even though section 905(b) bars indemnity actions brought by a vessel against an employer, that section does not bar indemnity actions brought by a nonvessel against an employer. The Court heard oral argument on Keystone's motion on March 9, 1983. Following the argument, the Court took the matter under submission.

The starting point for our analysis must be section 905(b). That section, which was added by the 1972 amendments to the LHWCA, provides:

> (b) In the event of injury to a person covered under this Act caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 33 of this Act [33 USCS § 933], and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was

caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this Act.

Courts have consistently construed section 905(b) as having abolished "the stevedore's [the employer's] obligation to indemnify the shipowner if the latter [is] held liable to the longshoreman." *Scindia Steam Navigation Co. v. De Los SANTOS,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981); *Pippen v. Shell Oil Co.,* 661 F.2d 378, 386 (5th Cir.1981); *Zapico v. Bucyrus-Erie Co.,* 579 F.2d 714, 721 (2d Cir.1978). In *Cooper Stevedoring Co. v. Fritze Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), the Supreme Court explained why Congress abolished this obligation:

> Under the 1972 amendments, an employee injured on a vessel can bring an action against the vessel for negligence, but the vessel's liability will not be based upon the warranty of seaworthiness or breach thereof. And where the vessel has been held liable for negligence "the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void." 33 U.S.C. § 905(b) (1970 ed., Supp. II). The intent and effect of [§ 905(b)] was to overrule this Court's decisions in *Seas Shipping Co. v. Sieracki,* 328 U.S. 85 [66 S.Ct. 872, 90 L.Ed. 1099] (1946), and *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.,* 350 U.S. 124 [76 S.Ct. 232, 100 L.Ed. 133] (1956), insofar as they made an employer circuitously liable for injuries to its employee [and thus undermined § 905(a)], by allowing the employee to maintain an action for unseaworthiness against the vessel and allowing the vessel to maintain an action for indemnity against the employer. See H.R.Rep. No. 92–1441, pp. 4–8 (1972); S.Rep. No. 92–115, pp. 8–12 (1972).

*Id.* at 112–13 n. 6, 94 S.Ct. at 2177–76 n. 6. Commenting on the purpose of section 905(b) in more detail, the Ninth Circuit has stated:

> An examination of the legislative history of section 905(b) suggests that Congress' purpose in prohibiting both direct and indirect liability of stevedores to vessels was to foreclose all theories under which *Ryan* triangle suits might be brought .... Before the enactment of section 905(b), shipowners had sued stevedores in contract for indemnification on the basis of express or implied warranties of workmanlike performance, and also for contribution on the theory that stevedores were joint tortfeasors. Under the contract theory, a stevedore was liable for breach of a duty owed directly to the vessel. Under the tort theory, a stevedore owed a duty directly to the longshoreman; hence, its liability to the vessel was indirect. By prohibiting both direct and indirect liability, Congress precluded liability under either theory. Thus, the House Labor and Education Committee explained: "It is the Committee's intention to prohibit such recovery [of a vessel against an employer] under any theory including, without limitation, theories based on contract or tort." H.R.Rep. No. 92–1441, 92nd Cong., 2d Sess. 7, reprinted in [1972] U.S.Code Cong. & Admin.News pp. 4698, 4704.

*Price v. Zim Israel Navigation Company, Ltd.,* 616 F.2d 422, 428 (9th Cir.1980); *see also Meredith v. A & P Boat Rentals, Inc.,* 414 F.Supp. 788 (E.D.La.1976).

Recently, two circuit courts have considered whether section 905(b) also abolished an employer's obligation to indemnify a nonvessel if the latter is held liable to a longshoreman. In *Zapico,* the Second Circuit concluded that section 905(b) did not abolish this obligation: "[T]he statute explicitly cuts off indemnity only to a 'vessel'." *Supra,* 579 F.2d at 721. The court elaborated on this point by saying:

> There is no assurance ... that if Congress had considered non-vessels it would have cut them off as well in order to

make compensation payments the sole liability of the employer and to stop triangular suits once and for all. The shipowners got a *quid pro quo* for the loss of their indemnity rights. Prior to the 1972 amendments they were liable to injured longshoremen not only for the ship's own negligence but also on a strict liability theory (the "unseaworthiness" doctrine) for conditions which often were actually created by the stevedore.... The 1972 amendments eliminated the unseaworthiness theory and limited vessel liability to negligence in exchange for the surrender of the vessel's indemnity rights.... No such *quid pro quo* was offered to non-vessels. Given the clear statutory language and the absence of legislative history at variance with it, we would hesitate to hold that § 905(b) by its own force cuts off the availability of *Ryan* indemnity to a non-vessel in all cases where the concurring negligence of a stevedoring company has caused injuries to the latter's employees, ... for example, although we do not intend these to be exclusive" where there is a direct contractual relationship between the third party and the stevedore or where the third party is designated as a beneficiary of an express contract between the stevedore and a vessel.

*Id.* at 721–22. (citations omitted) In *Pippen,* the Fifth Circuit similarly stated that "section [905(b)] expressly cuts off indemnity only to a 'vessel' and makes no specific reference to the right of a third-party nonvessel ... to bring an indemnity action against the employer." *Supra,* 661 F.2d at 387. The Fifth Circuit stopped short of expressly adopting the Second Circuit's rule, however, because the nonvessel in *Pippen* failed to show that an indemnity agreement existed between it and the employer.[1]

In light of *Zapico* and *Pippen,* as well as the language of the 1972 amendments, this Court finds that section 905(b) allows a nonvessel to bring an indemnity action against an employer in contract where the nonvessel has caused or contributed to a longshoreman's injury. Even so, that rule does not apply here. For in this case, Conoco did not cause or contribute to Gaudet's alleged injury. Exactly who bears responsibility for the alleged injury is not yet clear. The responsibility may be McDermott's, it may be Gaudet's, or it may be both McDermott's and Gaudet's. What is clear, at least at this point, is that Conoco is not responsible. Thus, this is not a case where the nonvessel is seeking to enforce an indemnity agreement in order to pay a longshoreman for injuries the nonvessel itself has caused or contributed to.

The difference between this case and *Zapico* and *Pippen* is relatively simple. In the latter two cases, the nonvessel sought indemnity from the employer in order to pay the longshoreman. The employer was thus indirectly liable (or potentially liable) to the longshoreman, not to the vessel. By contrast, the nonvessel here is seeking indemnity from the employer in order to indemnify the vessel. Thus, the employer in this case, if required to indemnify the nonvessel, would be made indirectly liable, not to the longshoreman, but to the vessel. This is precisely what section 905(b) forbids. That section provides, in pertinent part, that "the employer shall not be liable to the vessel for ... damages directly or indirectly and any agreements or warranties to the contrary shall be void." In short, then, Conoco is asking the Court to resurrect the vessel's *Ryan* triangle remedy. Conoco is asking that the vessel be allowed to do indirectly what the vessel clearly cannot do directly, namely, get indemnified by the employer. Given both the purpose and the language of

---

1. If the nonvessel's claim for indemnity from the employer had sounded in tort rather than in contract, the claim would have been readily dismissed. *See Oman v. Johns-Manville Corp.,* 482 F.Supp. 1060, 1073 (E.D.Va.1980) ("the exclusive remedy provision of the LHWCA, and the scheme created by that Act as a whole, precludes third parties ... from recovering indemnity or contribution from the employer where their [the third parties] claims rest upon common law rather than contract"). For an explanation of why indemnity claims sounding in tort and contract are treated differently, *see Zapico, supra,* 579 F.2d at 720–21.

section 905(b), the Court must decline Conoco's request.

While this ruling may be inconsistent with a literal reading of *Zapico* and *Pippen,* the ruling is not inconsistent with the underlying aims of those cases. Both cases sought to give effect to Congress' intent in enacting section 905(b). That intent was, in part, to bar the vessel from recovering against the employer. This ruling does just that.[2]

In light of the foregoing, the Court hereby GRANTS Keystone's motion for summary judgment.

---

2. Consider a slight, but significant, variation on the facts in this case. Suppose the nonvessel here had caused or contributed to the employee's injury. Under *Zapico* and *Pippen,* the nonvessel would presumably be entitled to indemnity for that portion of its liability attributable to its own negligence. Under the ruling here, however, the nonvessel would not be entitled to indemnity for that portion of its liability attributable to the vessel's negligence. In other words, the employer who has an indemnity agreement with a nonvessel is obligated to pay the nonvessel for that portion of damages occasioned by the nonvessel's negligence and for that portion only. Regardless of what the indemnity agreement says, such an employer is not obligated to pay the nonvessel for that portion of damages occasioned by the vessel.